# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

WALTER P. RAINEY, JR
and MELISSA K. RAINEY

CIVIL ACTION

VERSUS

21-124-SDD-RLB

J&S TRUCK SALES, L.L.C.,
ET AL.

## RULING

Before the Court is a *Motion to Dismiss*[1] under Rule 12(b)(2) and Rule 12(b)(6) filed by Defendants CMG Sales L.L.C. ("CMG") and Malcolm Galligher ("Galligher"). Plaintiffs, Walter P. Rainey, Jr. ("Mr. Rainey") and Melissa L. Rainey ("Mrs. Rainey") (collectively "Plaintiffs") filed an *Opposition*[2] to the *Motion*, to which CMG and Galligher filed a *Reply*.[3] For the following reasons, CMG and Galligher's *Motion to Dismiss*[4] shall be granted.

Also before the Court is a *Motion to Dismiss*[5] under Rule 12(b)(2) and Rule 12(b)(6) filed by Defendant Jeffrey Craft ("Craft"). Plaintiffs filed an *Opposition*[6] to the *Motion*, to which Craft filed a *Reply*.[7] For the following reasons, Craft's *Motion to Dismiss*[8] shall be granted.

---

[1] Rec. Doc. No. 47.
[2] Rec. Doc. No. 50.
[3] Rec. Doc. No. 52.
[4] Rec. Doc. No. 47.
[5] Rec. Doc. No. 51.
[6] Rec. Doc. No. 53.
[7] Rec. Doc. No. 54.
[8] Rec. Doc. No. 51.

## I. BACKGROUND

This case arises out of the sale of an allegedly defective eighteen-wheeler. Plaintiffs allege the following facts. Mr. Rainey is a freight truck driver.[9] In February 2020, Plaintiffs contacted J&S Truck Sales L.L.C. ("J&S") in Knoxville, Tennessee about purchasing a used truck.[10] Plaintiffs were interested in a 2004 Peterbilt 379 ("the Peterbilt").[11] They had multiple discussions with Galligher, a salesman at J&S, on or about February 26.[12] Galligher assured Plaintiffs that the Peterbilt had recently undergone a complete overhaul and was ready to be driven.[13] Plaintiffs allege that Galligher conducted sales through his company, CMG.[14] Also on February 26, Randall Craft, owner of J&S, executed a bill of sale for the Peterbilt.[15] Jeffrey Craft notarized the bill of sale "stating that Mr. Rainey personally came and appeared before him, when Mr. Rainey has never met him."[16] Craft also notarized a "Dealer Warranty Disclaimer" under the same circumstances.[17]

Roughly two weeks later, a third-party delivered the Peterbilt to Plaintiffs.[18] The third-party told Plaintiffs that the vehicle's heater did not work.[19] Plaintiffs brought the Peterbilt to a repair shop, and mechanics discovered numerous issues with the vehicle.[20]

---

[9] Rec. Doc. No. 37, p. 4.
[10] *Id*.
[11] *Id*.
[12] *Id*. at 4–5.
[13] *Id*. at 5.
[14] *Id*. Plaintiffs also allege that Galligher did not inform them that he was an independent contractor. *Id*. at 6.
[15] *Id*.
[16] *Id*. Plaintiffs also allege that Craft did not inform them that he was an independent contractor. *Id.* at 6.
[17] *Id*. at 14.
[18] *Id*. at 6.
[19] *Id*. at 7.
[20] *Id*.

Plaintiffs immediately notified Galligher of the issues, and J&S sent a check for $1000, which covered part of the repair costs.[21]

After Plaintiffs got the Peterbilt back from the repair shop, Mr. Rainey attempted to test-drive it, but it stalled.[22] Plaintiffs had the vehicle towed to another repair shop then transferred to Peterbilt of Louisiana.[23] The mechanics at Peterbilt of Louisiana found more problems with the Peterbilt.[24]

Plaintiffs sought relief from J&S and on multiple occasions spoke to Galligher, but to no avail.[25] Galligher "promised to overnight… [a record of] the repairs conducted on the Peterbilt prior to the sale, but never did."[26] From the delivery to the filing of the instant suit, the Peterbilt had been in a repair shop four times.[27] Plaintiffs had driven the Peterbilt less than 97 miles.[28] Plaintiffs bring claims for redhibition, breach of warranty, a violation of the Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTPA"), negligent misrepresentation, recission of the purchase contract, and fraud.[29]

## II.   LAW AND ANALYSIS

First, the Court considers whether it has personal jurisdiction over Craft, CMG, and Galligher. The Court's personal jurisdiction analysis proceeds claim by claim because Plaintiffs assert both intentional tort and other claims as to CMG and Galligher. The Court

---

[21] *Id*. at 8.
[22] *Id*.
[23] *Id*.
[24] *Id*. For example, "[a] spark plug was found on the back of the engine block, which is supposed to be a fuel drain line. Instead of having an actual line in the truck, there was the spark plug sticking in the hole. This is of importance due to the fact that diesel trucks do not have spark plugs." *Id*.
[25] *Id*.
[26] *Id*. at 8–9.
[27] *Id*. at 11.
[28] *Id*.
[29] *Id*. at 9–21.

concludes that it has jurisdiction over one claim as to CMG and Galligher, but the Court lacks jurisdiction over Craft. However, the Court also concludes that the one jurisdictionally viable claim against Galligher and CMG has prescribed.

### A. Personal Jurisdiction: Rule 12(b)(2) Motion to Dismiss

A federal district court sitting in diversity may exercise personal jurisdiction over a foreign defendant if: (1) the long-arm statute of the forum state enables personal jurisdiction over the defendant, and (2) the exercise of personal jurisdiction is consistent with the Due Process Clause. The due process and long-arm statute inquiries merge because Louisiana's long-arm statute extends jurisdiction coextensively with the limits of the Due Process Clause.[30]

A court may exercise specific jurisdiction[31] in conformity with due process "in a suit arising out of or related to the defendant's contacts with the forum"[32] when the "'nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities.'"[33] The Fifth Circuit follows a three-step analysis for specific personal jurisdiction. First, a court must determine "whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there."[34] The "'purposeful availment' must be such that the defendant 'should reasonably anticipate being haled into court' in the

---

[30] *Petroleum Helicopters, Inc. v. Avco Corporation*, 834 F.2d 510, 512 (5th Cir.1987).
[31] Plaintiffs do not allege general jurisdiction.
[32] *Luv N' Care, Ltd. v. Insta–Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (internal citations omitted).
[33] *Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colo.*, 615 F.3d 364, 368 (5th Cir. 2010) (quoting *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir. 2008)).
[34] *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006).

forum state."[35] Second, a court considers "whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts."[36] Third, "[e]ven if minimum contacts exist, the exercise of personal jurisdiction over a non-resident defendant will fail to satisfy due process requirements if the assertion of jurisdiction offends traditional notions of fair play and substantial justice."[37]

In *Walden v. Fiore*,[38] the Supreme Court reiterated that "[f]or a state to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State."[39] The relationship between the defendant and forum State "must arise out of contacts that the defendant *himself* creates with the forum State."[40] The due process limits of personal jurisdiction exist "principally [to] protect the liberty of the nonresident defendant—not the convenience of the plaintiffs or third parties."[41] Further, "the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him."[42] Finally, "[d]ue process requires that a defendant be haled into court in a forum state based on his own affiliation with the State, not based on the 'random, fortuitous or attenuated' contacts he makes by

---

[35] *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 419 (5th Cir. 1993) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). *See also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 ("This 'purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts.") (citations omitted); *In re Chinese Manufactured Drywall Products Liability Litigation*, 742 F.3d 576, 588 (5th Cir. 2014).
[36] *Seiferth*, 472 F.3d at 271.
[37] *Ruston Gas Turbines*, 9 F.3d at 421 (internal citations omitted).
[38] 571 U.S. 277 (2014).
[39] *Id*. at 284.
[40] *Id*.
[41] *Id*.
[42] *Id*. at 285.

interacting with other persons affiliated with the state."[43]

When a plaintiff alleges that a defendant committed an intentional tort, the personal jurisdiction analysis is slightly different.[44] The Supreme Court provided the analysis in *Walden*, and the Fifth Circuit recently summarized it as follows:

> A forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum. The proper focus of the minimum contact inquiry in intentional tort cases is the relationship among the defendant, the forum, and the litigation.[45]

"When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the court's jurisdiction over the nonresident."[46] When a district court rules on a motion to dismiss without an evidentiary hearing, the plaintiff need only present a *prima facie* case of personal jurisdiction.[47] At this stage, uncontroverted allegations in the complaint must be taken as true, and conflicts between the parties' affidavits must be resolved in the plaintiff's favor.[48] To aid resolution of the jurisdictional issue, a court "may receive interrogatories, depositions or any combination of the recognized methods of discovery . . . . But even if the court receives discovery materials, unless there is a full and fair hearing, it should not act as a fact finder and must construe all disputed facts in the plaintiff's favor and consider them along with the undisputed facts."[49] When deciding a motion to dismiss for lack of personal

---

[43] *Id.* at 286 (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985)).
[44] *Trois v. Apple Tree Auction Center, Inc.*, 882 F.3d 485, 490 (5th Cir. 2018).
[45] *Id.*
[46] *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985).
[47] *Trinity Indus., Inc. v. Myers & Assocs., Ltd.*, 41 F.3d 229, 230–31 (5th Cir. 1995).
[48] *D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 546 (5th Cir. 1985).
[49] *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241–42 (5th Cir. 2008) (holding that the district court erred in requiring a plaintiff to establish more than a *prima facie* case even after a limited pretrial evidentiary hearing) (internal citations and quotations omitted).

jurisdiction, the court is not limited to considering the facts pleaded in the complaint.[50]

Plaintiffs inartfully allege two claims as to Galligher and CMG: negligent misrepresentation and a violation of the LUTPA.[51] The Fifth Circuit directs that the personal jurisdiction analysis proceeds claim by claim.[52] Plaintiffs allege that Galligher negligently misrepresented the state of the Peterbilt. Negligent misrepresentation is not an intentional tort. Therefore, the standard minimum contacts analysis applies to Plaintiffs' negligent misrepresentation claim.

Plaintiffs allege that Galligher violated the LUTPA by "falsely and intentionally represent[ing] to the Raineys that the Peterbilt had a complete overhaul, there was no prior existing defects, and it was ready to be driven right away."[53] "[V]iolations of the LUTPA are delictual or quasi-delictual in nature."[54] Plaintiffs allege an intentional violation of the LUTPA, so Plaintiffs' LUTPA claim may be characterized as an intentional tort. Therefore, the intentional tort minimum contacts analysis applies.

The Court begins with the personal jurisdiction analysis of Plaintiffs' negligent misrepresentation claim. Plaintiffs argue that they have sufficiently alleged minimum contacts because Galligher was an independent contractor and the primary salesman who spoke with Plaintiffs.[55] Plaintiffs also include allegations in their *Opposition* that are not in the *Second Amended and Supplemental Complaint for Damages*, which the Court

---

[50] *Id.* For the purposes of this *Ruling*, the Court will treat Galligher's contacts as those of CMG.
[51] Rec. Doc. No. 37, p. 12–17.
[52] *Trois*, 882 F.3d at 489–91.
[53] Rec. Doc. No. 37, p. 14.
[54] *Zodiac 21, Inc. v. Oyo Hotels, Inc.*, 2020 WL 6479160, at *7 (M.D. La. Nov. 3, 2020).
[55] Rec. Doc. No. 50, p. 11.

will not consider.[56] Galligher and CMG's purported contacts with Louisiana boil down to the allegations that he spoke with Plaintiffs on February 26, 2020 about buying a Peterbilt, he spoke to Plaintiffs on several occasions after the sale of the Peterbilt regarding its alleged deficiencies, and he allegedly promised to send a document detailing the repairs that were performed before the sale but never did. It is noteworthy that Plaintiffs allege that they contacted J&S first.

Plaintiffs cite a plethora of law in support of their argument that they have alleged sufficient facts to establish minimum contacts. Plaintiffs argue that the Court may impute the contacts of a predecessor company to its successor.[57] Plaintiffs assert that the authorized actions of an agent can be imputed to the agent's principal.[58] And Plaintiffs aver that the Court may impute the contacts of one party to another if the Court finds that the parties are alter egos.[59] Finally, Plaintiffs summarize the apparent authority doctrine.[60] Plaintiffs conclude their argument with the assertions that "there is ample evidence that [Galligher] and his alter ego [CMG] were just not acting on behalf of [J&S]. Further, Defendants purposefully tried to avail themselves of liability by working as an independent contractor, not disclosing any agency to third parties such as [Plaintiffs]."[61]

---

[56] *Sheppard v. Cheeks*, 2020 WL 2301367, at *2 (W.D. La. Apr. 13, 2020), report and recommendation adopted, 2020 WL 2248134 (W.D. La. May 7, 2020), aff'd, No. 20-30355, 2022 WL 964202 (5th Cir. Mar. 30, 2022) ("The law is well-settled that arguments in a brief are not a substitute for properly plead allegations: "it is axiomatic that a complaint cannot be amended by briefs in opposition to a motion to dismiss."). These allegations include: Galligher's job title is "wholesale manager," he "portrays himself as the point of contact for any business transaction regarding the sales of vehicles," and he sent the bill of sale and title to the bank in Louisiana from which Plaintiffs obtained a loan for the vehicle. Rec. Doc. No. 50, p. 11.
[57] *Id*. at 11.
[58] *Id*.
[59] *Id*. at 11–12.
[60] *Id*. at 12.
[61] *Id*. at 13.

Plaintiffs fail to allege sufficient contacts under the standard minimum contacts analysis. Plaintiffs do not explain how any of the doctrines that they cite support their argument that Galligher and CMG have minimum contacts with Louisiana, and it is not apparent to the Court how the cited doctrines inform the minimum contacts inquiry. Galligher and CMG's contacts with Plaintiffs were preceded by Plaintiffs reaching out to J&S. Galligher responded to that inquiry with a limited number of phone calls over the span of a month, but the alleged misrepresentations that form the basis of Plaintiffs' negligent misrepresentation claim are alleged to have all occurred on one day—February 26, 2020. A limited number of phone calls related to the performance of a contract are insufficient contacts to establish that Galligher and CMG purposefully availed themselves of doing business in the forum state.[62] Therefore, Plaintiffs have failed to establish minimum contacts under the standard personal jurisdiction analysis, and Plaintiffs' negligent misrepresentation claim must be dismissed for lack of personal jurisdiction. However, applicable Supreme Court and Fifth Circuit precedent provide a home for Plaintiffs' LUTPA claim in this Court.[63]

In *Calder v. Jones*,[64] a libel case, the Supreme Court enshrined the "effects" test for personal jurisdiction. "In *Calder*, a California resident sued two Florida residents for libel, based on an article that they wrote and edited in Florida and published in a national magazine with a large readership in California."[65] The Supreme Court concluded that "California is the focal point both of the story and of the harm suffered, [therefore],

---

[62] *Trois*, 882 F.3d 485, 489 (5th Cir. 2018).
[63] *Id*.
[64] 465 U.S. 783 (1984).
[65] *Danziger & De Lano, L.L.P. v. Morgan Verkamp, L.L.C.*, 24 F.4th 491, 496 (5th Cir. 2022).

[j]urisdiction over [the defendants] is…proper in California based on the 'effects' of their Florida conduct in California."⁶⁶

The Supreme Court clarified the scope of *Calder* in *Walden v. Fiore*.⁶⁷ In *Walden*, a Georgia law enforcement officer seized cash from two Nevada residents who were passing through Georgia and refused to return it to them for a prolonged period.⁶⁸ The Court found it determinative that no part of the defendant's conduct occurred in Nevada, stating that "when viewed through the proper lens—whether the defendant's actions connect[ed] him to the forum—[the defendant] formed no jurisdictionally relevant contacts with Nevada."⁶⁹ Thus, "mere injury to a forum resident is not a sufficient connection to the forum…. The proper question is not whether the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."⁷⁰ The Fifth Circuit recently provided more details on the effects test.

In *Trois v. Apple Tree Auction Center*,⁷¹ the Texas citizen plaintiff, Charles Trois ("Trois"), sued an auction house and its Ohio citizen owner, Samuel Schnaidt ("Schnaidt"), alleging breach of contract and fraud.⁷² A third-party Kentucky citizen, Michael Barrick ("Barrick"), approached Trois about selling some of his collectibles through the auction house.⁷³ Trois expressed interest, so Barrick spoke with Trois two more times.⁷⁴ Schnaidt was on the line for both of those calls and allegedly misrepresented the auction house's

---

⁶⁶ *Calder*, 465 U.S. at 789.
⁶⁷ 571 U.S. 277 (2014).
⁶⁸ *Id*. at 279–80.
⁶⁹ *Id*. at 289.
⁷⁰ *Id*. at 290.
⁷¹ 882 F.3d 485 (5th Cir. 2018).
⁷² *Id*. at 488–489.
⁷³ *Id*. at 488.
⁷⁴ *Id.*

marketing tools and auction arrangements.[75] Based on these conversations, Trois traveled to Ohio where he entered into a contract with the auction house.[76] Schnaidt's contacts with Texas were limited to those two calls.

The Fifth Circuit reviewed applicable precedent and began the analysis by acknowledging that one intentionally tortious phone call to a forum can support personal jurisdiction.[77] The Court then distinguished between cases where the defendant initiates the call and cases where the defendant responds to a communication from the plaintiff.[78] The latter cases cannot support personal jurisdiction. In finding that personal jurisdiction was established in *Trois*, the court noted that while "Schnaidt did not initiate the conference call to Trois in Texas, Schnaidt was not a passive participant on the call. Instead, he was the key negotiating party who made representations regarding his business in a call to Texas."[79] Critically, those misrepresentations were the "intentional conduct on the part of Schnaidt that led to this litigation."[80]

However, the Fifth Circuit was "somewhat wary of drawing a bright line at who may push the buttons on a telephone."[81] As such, the court held "that Schnaidt, a willing participant on a conference call, who actively engaged in conversation regarding his business, [was] more akin to an initiator of a phone call as contrasted to the recipient of an uninitiated, unsolicited phone call."[82] Therefore, the Court must ask whether Galligher

---

[75] *Id*.
[76] *Id*.
[77] *Id*. at 491.
[78] *Id*.
[79] *Id*.
[80] *Id*.
[81] *Id*.
[82] *Id*.

is more akin to the initiator of a phone call or the recipient of an uninitiated, unsolicited call.

Galligher is analogous to the initiator of a phone call. Plaintiffs allege that they reached out to J&S, and Galligher, through multiple conversations that occurred on the same day, "falsely and intentionally represented to the Raineys that the Peterbilt had a complete overhaul, there was no prior existing defects, and it was ready to be driven right away."[83] Plaintiffs also allege that Galligher represented that a third party could deliver the Peterbilt to Plaintiffs, so he knew that Plaintiffs were in Louisiana. Plaintiffs do not allege how many calls were made or who initiated the calls after the first one. However, the Court may infer that Galligher was a "willing participant" on the calls. Further, the Court may infer that he "actively engaged in conversation" since Plaintiffs allege that he made representations about the Peterbilt and presumably facilitated negotiations over price. As such, Plaintiffs have alleged that Galligher was "more akin to the initiator of a phone call" than "the recipient of an uninitiated, unsolicited call."

Under *Trois*, Galligher's contact with the forum is sufficient to establish minimum contacts because his contact with the forum is alleged to have itself constituted an intentional tort.[84] It is the substance of Galligher's representations that form the basis of Plaintiffs' LUPTA claim, so the second prong of the personal jurisdiction inquiry is satisfied. Defendants offer no argument as to the third prong, and there is no indication that the exercise of personal jurisdiction over Galligher would offend traditional notions of fair play and substantial justice. Therefore, Plaintiffs have established personal

---

[83] Rec. Doc. No. 37, p. 14.
[84] *Trois*, 882 F.3d at 492.

Document Number: 70506

jurisdiction as to Galligher as to Plaintiff's claim that alleges an intentional violation of the LUTPA.

Plaintiffs have not, however, established personal jurisdiction as to Craft. Plaintiffs allege that Craft forged Mr. Rainey's signature and notarized paperwork outside of Plaintiffs' presence.[85] Plaintiffs assert that Craft committed fraud and violated the LUTPA through his actions. But Plaintiffs fail to allege that Craft had a contact with the forum. His allegedly tortious actions were all done in Tennessee. And while his actions had an effect in Louisiana (Plaintiffs' alleged injury), "mere injury to a forum resident is not a sufficient connection to the forum…. The proper question is not whether the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."[86] Simply put, Plaintiffs have not alleged that Craft had any contacts with Louisiana. The exercise of personal jurisdiction is not appropriate as to Craft, so dismissal is warranted.

### B. Prescription as to Galligher and CMG

Plaintiffs' LUTPA claim against Galligher and CMG is delictual in nature, so Louisiana law provides a one-year liberative prescriptive period.[87] The period "commences to run from the day injury or damage is sustained."[88] "Damage is considered to have been sustained, within the meaning of the article, only when it has manifested itself with sufficient certainty to support accrual of a cause of action."[89]

Plaintiffs allege that they discovered issues with the Peterbilt immediately upon

---

[85] Rec. Doc. No. 37, p. 19.
[86] *Walden*, 571 U.S. at 290.
[87] La. Civ. Code. Art. 3492.
[88] *Id*.
[89] *Cole v. Celotex Corp.*, 620 So.2d 1154, 1156 (La. 1993).

receipt of it in March 2020.[90] Further, they allege that they "immediately notified [Galligher]" of those issues.[91] Thus, Plaintiffs knew in March 2020 that the Peterbilt was not ready to be driven as Galligher allegedly misrepresented, so prescription began to run. Plaintiffs did not add Galligher and CMG to the suit until September 4, 2021, after the claims were prescribed on the face of the complaint. Therefore, because the complaint "shows on its face that the claim has prescribed, the burden shifts to the plaintiff to prove that the prescriptive period has been interrupted or suspended."[92]

Plaintiffs invoke the equitable doctrine of *contra non valentum.* There are four situations where *contra non valentum* may suspend the running of prescription, and Plaintiffs assert that two apply here. First, where "the debtor (Defendant) himself has done some act effectually to prevent the plaintiff from availing himself of his cause of action," and second, where "the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant."[93] Plaintiffs cite a Louisiana appellate case for the proposition that "[t]he use of *contra non valentem*…requires a finding of fraudulent or intentional concealment or misrepresentation."[94]

Plaintiffs raise three points in a very brief argument. First, Plaintiffs argue that it did not know that CMG and Galligher were independent contractors until June 2021.[95] Second, "Plaintiffs subsequently amended to include the Defendants in a timely

---

[90] Rec. Doc. No. 37, p. 7.
[91] *Id*.
[92] *Jacobs v. DaimlerCrysler Corp.*, No. 2:06 CV 0172, 2007 WL 902295, at *2 (W.D. La. Mar. 23, 2007).
[93] *Terrebonne Par. Sch. Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 884, n. 37 (5th Cir. 2002).
[94] Rec. Doc. No. 50, p. 14.
[95] *Id*.

manner."[96] Third, "Galligher knew as of April 29, 2021 that there was litigation he may be involved in whereas the Plaintiffs did not know until June 2, 2021."[97]

Plaintiffs' argument falls woefully short of carrying their burden. Plaintiffs do not allege that Galligher or CMG fraudulently or intentionally concealed their independent contractor status, and Plaintiffs fail to explain why such status is relevant at all. Plaintiffs' second point is factually inaccurate. And Plaintiffs' third point ignores Plaintiffs' own allegations that in March 2020 they knew of Galligher's involvement in the sale and his alleged misrepresentations *because Galligher was Plaintiffs' point of contact. Contra non valentum* does not apply in this case, so Plaintiffs' claims against Galligher and CMG are prescribed.

### III.   CONCLUSION

Plaintiffs' negligent misrepresentation claim against CMG and Galligher is dismissed for want of personal jurisdiction. Plaintiffs' claims against Jeffrey Craft are also dismissed for want of personal jurisdiction. Plaintiffs' LUTPA claim against CMG and Galligher is dismissed because it is prescribed. All dismissals are without prejudice, and Plaintiffs shall have one more opportunity to amend the *Second Amended Complaint* to properly state claims as to those Defendants. If Plaintiffs amend the *Second Amended Complaint*, such amendment shall be limited to allegations as to CMG, Galligher, and Jeffrey Craft.

For the reasons set forth above, CMG and Galligher's *Motion to Dismiss*[98] is

---

[96] *Id*.
[97] *Id*.
[98] Rec. Doc. No. 47.

Document Number: 70506

GRANTED. Jeffrey Craft's *Motion to Dismiss* is also GRANTED.[99] The *Second Amended Complaint*[100] is dismissed without prejudice as to CMG, Galligher, and Jeffrey Craft. Plaintiffs shall have 21 days from the date of this *Ruling* to amend. If Plaintiffs fail to do so, this dismissal will convert to a dismissal with prejudice as to CMG, Galligher, and Jeffrey Craft.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>July 13, 2022</u>.

*Shelly D. Dick*

**CHIEF JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[99] Rec. Doc. No. 51.
[100] Rec. Doc. No. 37.